IN THE UNITED STATES DISTRICT COURT

NOTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

RECEIVED

OCT 3 1 2018 LA

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| STACY PEREZ, | ) | No: |
| Plaintiff, | ) | |
| Vs. | ) | **1:18-cv-07281** |
| VILLAGE OF MAYWOOD (The Village) | ) | **Judge John Z. Lee** |
| Connie Thompson | ) | **Magistrate Judge Susan E. Cox** |
| MAYWOOD POLICE DEPARTMENT (M.P.D.) | ) | |
| Sean Early # 320 | ) | |
| Brandon Hawkins # 310 | ) | |
| Michael Frommert # 317 | ) | |
| Pete Schleich # 293 | ) | |
| Eric Dent # 271 | ) | |
| Theodore Yancy # 259 | ) | |
| Valdimir Talley | ) | |
| Elijah Willis | ) | |
| Charlotte Powell | ) | |
| Donna Marquette | ) | |
| Venus Meadows | ) | |
| OFFICE OF ADMINISTRATIVE HEARINGS | ) | |
| ORDINANCE ENFORCEMENT DEPARTMENT | ) | |
| DEPARTMENT OF COMMUNITY DEVELOPMEN | | |
| VILLAGE ATTORNEY'S KLEIN, THORPE & JENKINS | | |
| MAYBROOK COURT HOUSE (The State) | ) | |
| Sean Brady | ) | |
| David Neal | ) | |
| Melissa Soso | ) | |
| Ememobong Ikaffia | ) | |

Daniel Groth                                    )

Judge Shoffner                                  )

Illinois Law Enforcement Training and Standards Board (ILETSB)

    Defendants,                             )

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Under Titles: **42 U.S.C.** §§ 1983, 1985, 1986, 1988 and **28 U.S.C.** §§ 1331, 1343, 1367, 1391, 1407

NOW COMES Plaintiff, STACY PEREZ, Pro Se, against the defendants - Maywood Police Department, Village of Maywood, Village Clerk Connie Thompson, Maywood Office of Administrative Hearings, Maywood Ordinance Enforcement Department, Maywood Department of Community Development, which include but are not limited to: Sean Early # 320, Brandon Hawkins # 310, Michael Frommert # 317, Pete Schleich # 293, Eric Dent # 271, Theodore Yancy # 259, Valdimir Talley, Elijah Willis, Charlotte Powell, Donna Marquette, Venus Meadows, Maywood Village Attorney Representatives Klein, Thorpe and Jenkins, LTD., Maybrook Court House Prosecutors: David Neal, Melissa Soso, Ememobong Ikaffia, Daniel Groth, Judge Robin Shoffner - and complains as follows:

To recover damages for civil rights violations and to redress the deprivation of the civil rights of the Plaintiff under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution stemming from the acts and omissions of all the Defendants committed in both their individual and official capacities under color of law.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this matter pursuant to Titles: **42 U.S.C.** §§ 1983, 1985, 1986, 1988, and **28 U.S.C.** §§ 1331, 1343, 1367, 1391, 1407

2. This venue is proper because, upon information and belief, all of the parties reside in this district and all the events described herein occurred in this district.

## PARTIES

3. Plaintiff, STACY PEREZ, is a citizen of the United States, residing in the Chicago, Cook County, Illinois.

4. Defendant: Sean Early # 320, Brandon Hawkins # 310, Michael Frommert # 317, Pete Schleich # 293, Eric Dent # 271, Theodore Yancy # 259, Valdimir Talley, Elijah Willis, Charlotte Powell, Donna Marquette and Venus Meadows are each officers of the Maywood Police Department for the Village of Maywood, a municipality of the State of Illinois and employer of all above listed officers, all of who are citizens of the United States and residing in the County of Cook and the State of Illinois.

5. The Village of Maywood is a political division of the State of Illinois, existing as such under the laws of the State of Illinois and has maintained, managed, and/or operated the Maywood Police Department, the Maywood Department of Administrative Hearings, the Ordinance Enforcement Department, the Department of Community Development, the and the city clerk Ms. Connie Thompson serving as the freedom of information act officer (FOIA), the village attorney's Klein, Trope, and Jenkins, and the Maybrook Court House that employs David Neal, Melissa Soso, Ememobong Ikaffia, Daniel Groth, Judge Shoffner

6. The Maywood Office of Administrative Hearings is an entity created by the Village of Maywood to adjudicate alleged violations of Maywood ordinances and impose civil liability penalties where violations of ordinances are found by a preponderance of the evidence.

7. The Maywood Ordinance Enforcement Department is an entity created by the Village of Maywood to adjudicate alleged violations of Maywood ordinances and impose civil liability penalties where violations of ordinances are found by a preponderance of the evidence.

8. The Maywood Department of Community Development is an entity created by the Village of Maywood to adjudicate alleged violations of Maywood ordinances and impose civil liability penalties where violations of ordinances are found by a preponderance of the evidence.

9. The Maybrook Court House that employs David Neal, Melissa Soso, Ememobong Ikaffia, Daniel Groth, Judge Shoffner who were at all times material and relevant hereto

10. Klein, Thorpe and Jenkins, LTD., were at all times material and relevant hereto representative attorneys on behalf of the Village of Maywood as well as the Maywood Police Department

## **BACKGROUND**

9. "911, what's your emergency?", and so it was on the night of October 30th 2016 at approximately 11:20pm this urgency began.

10. My date, Aaron Armstrong stated to 911 dispatcher Stephen Dottery, of the M.P.D., in an excited utterance, that he was near a bus stop and was almost hit by a car.

11. Officer's Sean Early, Brandon Hawkins, Eric Dent, Pete Schleich, and Michael Frommert all arrived to the scene.

12. Meanwhile, I was asleep in the passenger seat of my car, after having asked my date Aaron Armstrong if he wouldn't mind driving us back to my place from my friend's Jeremy Kiser's dinner social for the Cub's World Series playoff game, we had just left.

13. Directly behind my parked car Officer Sean Early dispatched Mr. Dottery confirming the identity of the 911 caller, Indiana resident Aaron Armstrong, who possessed a chauffer's license, and also confirmed identification of my parked 2-door 2-seat Smart car on 5th and Quincy, with its 2 flat tires on the passenger side.

14. Suddenly there was a bright blinding light shining directly in my eyes waking me up along with loud voices of several men around my car, one of which immediately directed me to answer several quickly posed questions after being startled awake, and without an opportunity to respond I was then instructed to get out of the vehicle by Officer Early.

15. As I looked to view the only possible tire I could see directly to the right of me (behind Early who was standing between the door of the car, and between me and the tire) and immediately after a small pivot to the right to view the flat I was instructed not to move and was baselessly arrested.

16. I was placed in the back seat and watched Early walk back to my car where the other dispatched officers were huddled around my date, on the driver side; I then tossed my head back and looked prayerfully upward just before an officer stepped into the squad and drove me to the M.P.D.

17. I was unlawfully detained for 12 hours in a cell that did not provide a seat, a cot, a mattress, or even a cover other than a cold dusty concrete floor to sleep on.

18. The only time I was woken up was to be provided breakfast, at which time I was also allowed to make my phone call for pick up from the station.

19. From the moment I was detained at the station I verbally questioned every officer I encountered as to where my date Aaron Armstrong was, the driver of the vehicle.

20. 12 hours after my arrest I was being processed for fingerprints and mug shots, and in order to be released from the station the M.P.D. instructed my pick up person and longtime family friend, fireman of Maywood Phil Brooks, that he needed to drive me to my bank in order for me to pay all my fee's for getting out.

21. The fees included a $300 cash advance on the $3,000 I-bond put on me, and a $500 cash administrative fee in order to be given the tow information for my car, which was another $315 cash at the pound.

24. Aaron Armstrong attempted to call the tow service from my phone while I was asleep in the passenger seat because his phone died.

25. During the time I was in custody Aaron Armstrong called Jeremy Kiser from my phone to inform him that he was on his way back to his house to wait for an uber to pick him up.

26. Mr. Armstrong did return to Jeremy Kiser's house to wait for an uber while I was in custody.

27. Immediately upon release I obtained Martha White as my defense attorney, and November 2nd 2016 she served the Maywood Police Department their first subpoena.

## COUNT I

Plaintiff against:

Early, Hawkins, Dent, Frommert, Schleich, Yancy, Talley, Willis, Powell, Marquette, Meadows, The Village, M.P.D., Administrative Hearings, Ordinance Enforcement, Community Development, Klein, Thorpe and Jenkins, Maybrook Court House

## WILLFUL AND WANTON CONDUCT

22. Early, Hawkins, Dent, Frommert, Schleich, or Yancy never asked me for my license or registration and I did have a valid license and registration in my glove compartment.

23. I did not know I was being arrested and charged with a DUI nor I was ever informed by any of the defendants that I was, until 12 hours later when I was being processed.

24. None of the defendant's, at any point in 12 hours of my imprisonment, ever asked me to do any kind of DUI testing, walking, or breathalyzer and I never refused the opportunity to do so.

25. Plaintiff was issued tickets alleging violation of Illinois State laws by:
    1) Driving under the influence
    2) Not possessing a driver's license
    3) No insurance
    4) Obstruction
    5) Resisting arrest

26. In effect, the Village of Maywood *respondeat superior* of all listed Defendants were all each in their individual capacity and in support of accusing plaintiff of being incompliant

with Maywood Municipal Ordinances which constitute disorderly conduct as follows:

§130.20(A)(5)
Resisting or obstructing the performance of one known to be a police officer or any authorized act within the police officer's official capacity, or impersonating a police officer.

27. Plaintiff did not resist or obstruct Early, Hawkins, Frommert, Dent, Schleich, Yancy, any other Maywood Police officer or the Village of Maywood in the performance of any authorized act.

130.20 (A)(1)
Making, aiding or assisting in making any improper noise, riot, disturbance, breach of the peace or diversion tending to a breach of the peace.

28. Early, Hawkins, Frommert, Dent, and Schleich were dispatched to and were on the scene for a suspicious vehicle and immediately assumed that Plaintiff caused a disturbance or a breach of the peace by alleging she was driving under the influence.

29. Early, Hawkins, Frommert, Dent, or Schleich never preformed a community care check of Plaintiff's person or vehicle but maliciously chose inflicting plaintiff with the graver consequences of issuing tickets for breaking state laws versus issuing a citation and complaint for assumed breach of Maywood Ordinances.

30. There was no legal reason for the Defendant officer's and the Village of Maywood to:
    (1) Initiate and cause the prosecution of the plaintiff
    (2) Search and tow her car
    (3) Charge a $500 administrative fee to get vehicles impound location

31. April 20th 2017 Ms. White Petitioned Maybrook Court a Ruled to Show Cause for M.P.D. not having replied to her November 2nd 2016 Subpoena as well as for officer's constantly ignoring her subpoenas to attend court.

32. Hawkins, Powell, including Marquette and Meadows as the 'record keepers' (who at the time still had not been disclosed by M.P.D.) were attentioned on the Rule to Show Cause

33. At court there are 2 separate jackets and/or files for both my Maywood DUI's, both of which are constantly not available or found the days I have court, and 9/10 times Ms. White has to roam the court house in search of the jackets that always seem to elude the clerks of the court.

34. The front of both jackets are not kept in chronological order with the correct information pertaining to the correct DUI and the disorderly note taking on both files with inaccurate

names, dates and times would make it very difficult to appeal being wrongfully convicted.

35. As a result of the Defendants' unconstitutional conduct, Plaintiff has suffered prejudice, pain and injury, a damaged reputation, financial loss, as well as mental and emotional distress.

36. The aforementioned acts of Defendants were willful and wanton, oppressive, done with reckless indifference and callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

WHEREFORE, Ms. Perez respectfully requests that this Court enter judgment in her favor and against Defendants, awarding compensatory damages and attorneys' fees, along with punitive damages against Defendants and any other relief deemed appropriate, equitable, and just.

## COUNT II

Plaintiff against:

Early, Hawkins, Dent, Frommert, Schleich, Yancy, Talley, Willis, Powell, Marquette, Meadows, The Village, M.P.D., Administrative Hearings, Ordinance Enforcement, Community Development, Klein, Thorpe and Jenkins, Maybrook Court House

### UNLAWFUL SEIZURE & FALSE ARREST

37. The arbitrary intrusion by Defendants, into the security and privacy of Plaintiff's person was in violation of Plaintiff's constitutional rights in the following manner:

    (1) Initial seizure of Plaintiff's person was not supported by reasonable suspicion

    (2) Custodial arrest of Plaintiff was not supported by probable cause

    (3) Defendant's independent decisions to continue and/or fail to stop the initial seizure, the custodial arrest, and/or the civil deprivations that the defendant's knew were in violation of Plaintiff's rights

38. Early, Hawkins, Dent, Frommert, Schleich never observed the Plaintiff driving hazardously nor was plaintiff's conduct in and/or out of the car unlawful.

39. Plaintiff was asleep in her car with 2 flat tires while the defendant officers were talking to Aaron Armstrong before, during, and after plaintiff was startled awake with a blinding light and loud male conversations.

40. Probable cause never existed for the arrest of the Plaintiff and none of the defendants had reasonable grounds to believe that Ms. Perez had committed a petty or criminal offense.

WHEREFORE, Ms. Perez respectfully requests that this Court enter judgment in her favor and against Defendants, awarding compensatory damages and attorneys' fees, along with punitive damages against Defendants and any other relief deemed appropriate, equitable, and just.

## COUNT III

Plaintiff against:

Early, Hawkins, Dent, Frommert, Schleich, Yancy, Talley, Willis, Powell, Marquette, Meadows, The Village, M.P.D., Administrative Hearings, Ordinance Enforcement, Community Development, Klein, Thorpe and Jenkins, Maybrook Court House

### UNLAWFUL DETENTION & FALSE IMPRISONMENT

41. The arbitrary intrusion by Defendants, into the security and privacy of Plaintiff's person, was in violation of Plaintiff's constitutional rights in the following manner:

    (1) Initial seizure of Plaintiff's person was not supported by reasonable suspicion

    (2) Custodial arrest of Plaintiff was not supported by probable cause

    (3) Defendant's independent decisions to continue and/or fail to stop the initial seizure, the custodial arrest, and/or the civil deprivations that the defendant's knew were in violation of Plaintiff's rights

42. Defendants accused Plaintiff of criminal activity, withheld exculpatory evidence from prosecutors, and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings, all the while knowing those accusations to be without probable cause.

WHEREFORE, Ms. Perez respectfully requests that this Court enter judgment in her favor and against Defendants, awarding compensatory damages and attorneys' fees, along with punitive damages against Defendants and any other relief deemed appropriate, equitable, and just.

## COUNT IV

Plaintiff against:

Early, Hawkins, Dent, Frommert, Schleich, Yancy, Talley, Willis, Powell, Marquette, Meadows, The Village, M.P.D., Administrative Hearings, Ordinance Enforcement, Community Development, Klein, Thorpe and Jenkins, Maybrook Court House

### FAILURE TO INTERVIENE AND TO PROTECT

43. Hawkins, Dent, Frommert, Schleich, Yancy and the Village had a reasonable opportunity,

had they been so inclined, to prevent Early from violating Plaintiff's rights in the manner described herein, but they failed to do so.

44. Defendants accused Plaintiff of criminal activity, withheld exculpatory evidence from prosecutors, and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings, all the while knowing those accusations to be without probable cause.

45. After making the 911 call, communicating and being in close contact with the officer's, neither Early, Hawkins, Dent, Schleich, Frommert, or Yancy never took a witness statement from Aaron Armstrong.

46. The arbitrary intrusion by Defendants, into the security and privacy of Plaintiff's person, was in violation of Plaintiff's constitutional rights in the following manner:

    (1) Initial seizure of Plaintiff's person was not supported by reasonable suspicion

    (2) Custodial arrest of Plaintiff was not supported by probable cause

    (3) Defendant's independent decisions to continue and/or fail to stop the initial seizure, the custodial arrest, and/or the civil deprivations that the defendant's knew were in violation of Plaintiff's rights

47. As more fully described in the preceding paragraphs the Defendants acting in concert with other known and unknown co-conspirators conspired by concerted action to accomplish an unlawful purpose through an unlawful means.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment in her favor and against Defendants, awarding compensatory damages and attorneys' fees, along with punitive damages against Defendants and any other relief deemed appropriate, equitable, and just.

## COUNT V

Plaintiff against:

Early, Hawkins, Dent, Frommert, Schleich, Yancy, Talley, Willis, Powell, Marquette, Meadows, The Village, M.P.D., Administrative Hearings, Ordinance Enforcement, Community Development, Klein, Thorpe and Jenkins, Maybrook Court House

David Neal, Melissa Soso, Daniel Groth, Judge Shoffner

### DUE PROCESS

48. Defendants, while acting individually, jointly and in lack of fairness, as well as under color of law and within the scope of employment, deprived Plaintiff of her constitutional right to a fair trial.

49. In open court Shoffner expressed having restless nights and a sickening sensation that she granted the statutory summary suspension in my favor on or about March 1, 2017, which gave me the right to drive again.

50. Around January 29th 2018 Ms. White motioned the court for a substitution of judge for cause and at the hearing held after Ms. White was denied this motion and Shoffner remained appointed my Judge. (date of ruling to be included in amended copy)

51. Judge Shoffner ruled in favor of the State's Supplemental Petition to Revoke Probation, Conditional Discharge or Supervision and ordered that I shall not operate a vehicle as long as I have my DUI pending before her Court. (date of ruling to be included in amended copy)

52. The separation of powers clause of the Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers belonging to another." *Ill. Const. 1970, art. II, sect.1.*

53. To my understanding the legislature is the branch of government charged with the determination of public policy and the constitutional authority to enact complementary statutes.

54. June 5, 2018, Judge Shoffner ruled that Ms. White shall tender to the State her discovery.

55. The Illinois Supreme Court ruled that a trial court does not have inherent authority to order discovery of the defendant by the State in a non-felony case. *People v. James W. Williams, Jr. (Charles H. Delano), 87 Ill. 2d 161, 165 (Ill. 1981), 429 N.E. 2d 487.*

56. Thereby misleading and misdirecting the criminal prosecution of Plaintiff and absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

WHEREFORE, Ms. Perez respectfully requests that this Court enter judgment in her favor and against Defendants, awarding compensatory damages and attorneys' fees, along with punitive damages against Defendants and any other relief deemed appropriate, equitable, and just.

## COUNT VI

Plaintiff against:

Early, Hawkins, Dent, Frommert, Schleich, Yancy, Talley, Willis, Powell, Marquette, Meadows, The Village, M.P.D., Administrative Hearings, Ordinance Enforcement, Community Development, Klein, Thorpe and Jenkins, Maybrook Court House, David Neal, Melissa Soso, Daniel Groth, Judge Shoffner

**MALICIOUS PROSECUTION**

57. Defendants initiated, facilitated, and/or continued this malicious prosecution by preparing, and/or signing and tendering delayed reports and legal documents, causing the initiation or continuation of legal proceedings against Plaintiff.

58. January 2017 and April 2018 prosecutors Neal, Soso, and Groth proposed senate bills to legislation to amend the Code of Criminal Procedure of 1963 to admit proof of other crimes and acts for DUI offense.

59. April 2018 both Senate Bill SB0681 and Senate Bill SB3155 failed in the assigned committee and neither piece of legislation progressed beyond the assigned committee.

60. Prosecutor's Sean Brady, Neal, Soso, Ikaffia has failed to tender to Ms. White any discovery material from my first Maywood DUI arrest on September 29, 2015 on the case at bar.

70. From my understanding the duty to disclose by the State is a continuing one requiring prompt notification to the Defendant of the discovery of any additional material or information, up to and during trial. *People v. Watson, 76 Ill. App. 3d 931, 932 (5th Dist. 1979); People v. Visgar, 120 Ill. App. 3d 584 (2nd Dist. 1983).*

80. Rule 3 .1 of the Illinois Rules of Professional Conduct states, "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law."

81. June 5th 2018, after both senate bills failed April 2018, the State and/or Ms. Soso requested permission to file a Proof of Other Crimes Motion and Judge Shoffner granted permission to file in one week.

82. July 24th 2018 Ms. White motioned assigned prosecutor Ms. Soso for Sanctions, along with a Petition for Attorney's Fee's

83. The State was granted to have until September 3rd to respond to Motion for Sanctions.

84. As of summer 2018 Ememobong Ikafia was the fourth prosecutor assigned to defend M.P.D. (date to be provided in amended copy)

85. September 3rd 2018 Ms. Soso requested a hearing for an extension of time to respond and at the hearing on September 4th 2018 Ms. Soso was granted extension.

86. September 11th 2018 Ms.Ikaffia responded to the Sanction, not Ms. Soso who motioned and was granted for herself to respond.

87. October 11th 2018 neither Ms. Ikaffia nor Ms. Soso were present to defend the Sanction they both conspired to receive an extension for defense for and instead Supervisor Daniel Groth was in their place.

88. That day my Ms. White was present in court despite feeling ill and the hearing was continued due to her being very visibly ill.

89. October 18th 2018 neither Ms. Ikaffia nor Ms. Soso were present to defend the Sanction and instead Supervisor Daniel Groth, who personally petitioned both senate bills, was the counsel to argue against the sanction.

90. October 18th 2018 after Shoffner ruled in favor of the State and denied Ms. White's Sanction and Petition for Attorney Fees.

91. At that time of the ruling the State finally tendered discovery from my first Maywood DUI of September 29th 2015

92. Shoffner's rulings indicate a tendency or preference towards a particular perspective, ideology or result, and this tendency interferes with her ability to be an impartial, unprejudiced, or objective judge.

93. Defendants accused Plaintiff of criminal activity, withheld exculpatory evidence from prosecutors, and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings, all the while knowing those accusations to be without probable cause.

94. Therefore, the Village of Maywood is liable to Plaintiff for the acts of the Defendants pursuant to the doctrine of respondeat superior under the supplemental state law claim of Malicious Prosecution.

WHEREFORE, Ms. Perez respectfully requests that this Court enter judgment in her favor and against Defendants, awarding compensatory damages and attorneys' fees, along with punitive damages against Defendants and any other relief deemed appropriate, equitable, and just.

## COUNT VII

Plaintiff against:

Early, Hawkins, Dent, Frommert, Schleich, Yancy, Talley, Willis, Powell, Marquette, Meadows, The Village, Thompson, M.P.D., Administrative Hearings, Ordinance Enforcement, Community Development, Klein, Thorpe and Jenkins, Maybrook Court House, David Neal, Melissa Soso, Daniel Groth, Judge Shoffner

### CONSPIRACY

95. As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, reached an understanding to deprive Plaintiff of her constitutional rights.

96. In furtherance of the conspiracy, the Defendants committed overt acts and whether or

not willful or un-willful, knowingly or un-knowingly, person's blindly participated in joint activity with the state actors under color of law.

97. The Village, Yancy Early, Dent, Hawkins, Frommert conspired to secure Plaintiff's arrest, imprisonment and prosecution by authorizing, approving, and signing false written reports.

98. Current pending criminal charges on plaintiff's record, in addition to a conviction for a fictitious DUI September 29th 2015 given by officer Dent, have trumped the Plaintiff's job opportunities for hire due to unjustly being incriminated by the M.P.D. and the Village.

99. Around March 2017 until around July 2017 I FOIA'ed Village Clerk Connie Thompson in regards to my file, record and pending case with M.P.D.

100. Multiple times Ms. Thompson failed to respond within the 5 working days required and I would constantly have to submit a request for review to the deputy public access counselors in Springfield as to why it took month long delays in receiving information that was pertinent to timing and supporting my pending case.

101. Several times I submitted a request for review in regards to M.P.D. not answering the FOIAs submitted to them at all or giving information that had nothing to do with the FOIA question at hand even after taking well over 5 days to give no response or unassociated responses.

102. In one of the reviews for request I questioned why I was not given documentation in regards to Schleich and Klein replied saying Schleich was not at work that day when in fact he was and was dispatched to the scene the night of my arrest.

WHEREFORE, Ms. Perez respectfully requests that this Court enter judgment in her favor and against Defendants, awarding compensatory damages and attorneys' fees, along with punitive damages against Defendants and any other relief deemed appropriate, equitable, and just.

## COUNT VIII

Plaintiff against:

The Village, M.P.D., Administrative Hearings, Ordinance Enforcement, Community Development, Maybrook Court House

### *MONELL* CLAIM & RESPONDEAT SUPERIOR

103. The defendant, Village of Maywood, the sole policymaker for the Village of Maywood Police Department, promulgated, adopted and/or put into effect policies, procedures and/or de facto customs which were in direct violation of 42 USC §1983, and in direct contravention of the constitutionally guaranteed rights of all citizens of the United States to be free from unreasonable and unlawful searches of their person, and to be free from the use of excessive force, which policies, procedures and/or de facto customs, were in

force and in effect on October 30th, 2016.

104. Maywood Police Officers are not properly trained in the use of force or the rights of citizens to be free of arbitrary stops.

105. Maywood Police Officers are not given continuing training after leaving the police academy on the use of force.

106. The Village of Maywood does not properly investigate the use of force or certain officers' practice of stopping citizens without cause or provocation.

107. The Village of Maywood deliberately fails to adequately keep records of misconduct to prevent patterns of misconduct from being established. These actions deliberately further the concealment of police misconduct.

108. The Village of Maywood also has a practice of condoning police misconduct and not disciplining officers who engage in misconduct.

109. The actions of the police defendants as alleged above were done pursuant to one or more *de facto* policies, practices and/or customs of the Village of Maywood.

110. On and before October 30th, 2016 the defendant Village of Maywood had policies, practices, and customs which included, *inter alia*:
    (a) the failure to properly train, supervise, discipline, transfer, counsel and otherwise control police officers in the use of force;
    (b) suffering, maintaining, allowing or permitting a code of silence about police misconduct in the use of force; and
    (c) the failure to discipline police officers who use excessive force.

111. The above, *de facto* policies, practices, and customs of the defendant Village of Maywood, results in indifference by police officers so that they use excessive force with impunity.

112. I FOIA'ed the Illinois Law Enforcement Training and Standards Board (ILETSB) because it is my understanding that pursuant to 50 ILCS 706/10-25:

113. Each law enforcement agency that utilizes body worn cameras must provide a report to the Board by May 1 of each year indicating the number of cameras in use, the number of officers who have used body worn cameras, technical issues encountered with the use of such cameras and the review process used by supervisors. For each instance in which a body camera was used in a prosecution, the agency must indicate the date, time, location, offense and charging date.

114. ILETSB replied saying that they had no records submitted by the M.P.D. on file pertaining to cameras, records, or trainings.

115. The aforementioned policies, practices, and customs of the defendant Village of Maywood, are a proximate cause of the injury and deprivation of Ms. Perez's

constitutionally protected rights.

116. The aforementioned policies, practices, and customs of the defendant Village of Maywood were maintained and implemented with deliberate indifference and have encouraged the individual defendants to commit wrongful acts against the plaintiff, and are therefore a direct and proximate cause of injury to and deprivation of Ms. Perez's constitutionally protected rights.

117. Illinois law, 735 ILCS 10/9-102, provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

118. By reason of the above-described acts and omissions of all listed defendants Plaintiff sustained injuries, including but not limited to, humiliation and indignities, and suffered great mental and emotional pain and suffering all to her damage in an amount to be ascertained.

WHEREFORE, the Plaintiff requests a jury by demand for judgment as follows against the Defendants, and each of them:

> Pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision, that the Defendants in Counts I-VIII be required to pay punitive and exemplary damages as well as Plaintiff's attorney's fees in a sum to be ascertained

Respectfully Submitted,<br>
By: Stacy Perez<br>
Pro Se Plaintiff